UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LORI BETH ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-503-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Lori Beth Adams seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits ("DIB"). Specifically, the plaintiff contends that the Administrative Law Judge ("ALJ") erred by finding that she was able to perform past relevant work and was not disabled for the purposes of the Social Security Act ("the Act"). However, because the Commissioner's decision is supported by substantial evidence and is based on a proper application of the law, his decision will be affirmed. Accordingly, the Commissioner's motion for summary judgment will be granted while the plaintiff's motion will be denied.

**I.**

Adams filed an application for DIB under Title II of the Act on May 26, 2017, alleging a disability onset date of May 25, 2017. [*See* Administrative Transcript, hereafter "Tr.", 180-81.] Her claim was disapproved initially and upon reconsideration. [Tr. 80, 93, 108] Thereafter, Adams requested a hearing before an ALJ. [Tr. 129] ALJ Boyce Crocker held a hearing on May 13, 2019 [Tr. 51], and issued a written decision denying benefits on June 24,

- 1 -

2019.  [Tr. 39-50]  The ruling became the Commissioner's final decision when the Appeals Council denied Adams' request for review on November 1, 2019.  [Tr. 1-6]  This case is now ripe for review.  *See* 42 U.S.C. § 405(g).

## II.

Adams was 63 years old at the time the ALJ issued his decision.  [*See* Tr. 180]  She holds an associate's degree in nursing, and in the fifteen years prior to the onset of her alleged disability, Adams served as a nurse in various capacities.  [Tr. 54-59]  Prior to 2007, she worked as a surgical circulating nurse, surgical scrub nurse, and clinical manager at the University of Kentucky's maxillofacial clinic.  [*Id.*]  From 2007 to 2017, she served as a data nurse coordinator at UK HealthCare Transplant Center.  [Tr. 59]  Adams initially listed the following impairments as conditions that limited her ability to work when applying for DIB: cervical degenerative disc disease, lumbar degenerative disc disease, spondylosis of the cervical spine, spondylosis of the lumbar spine, myofascial pain (headaches, shoulder and arm pain), spinal stenosis (neck pain, headaches, and shoulder pain), migraines relating to cervical neuromuscular disease, type 2 diabetes, uncontrolled hypertension, and stage III chronic kidney disease.  [Tr. 193]

In the decision denying DIB benefits,  ALJ Crocker first noted that Adams had some earnings during the second quarter of 2018 above the level of substantial gainful activity but proceeded with a sequential evaluation of Adams' case because she had, at some point, a continuous period of 12 months in which she did not engage in substantial gainful activity. [Tr. 41]

ALJ Crocker also found that the claimant had the following severe impairments that significantly limited her ability to perform basic work activities: degenerative disc disease of

the cervical spine with radiation, degenerative disc disease of the lumbar spine, obesity, and a history of knee ligament repair.  [Tr. 41-42]  The ALJ found that migraines, cataracts, hypertension, stage III chronic kidney disease, type 2 diabetes, and tobacco abuse in remission were not severe and did not have more than a minimal effect on the plaintiff's ability to work. [Tr. 42]  The ALJ determined that Adams' impairments, individually or combined, did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [*See* Tr. 42-43; *see also* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").]

ALJ Crocker found that Adams had the residual functional capacity ("RFC") to perform sedentary work as defined by 20 CFR § 404.1567(a).  [Tr. 47]  He determined that the medical evidence supported the following limitations: standing/walking two hours in an eight hour day; occasional climbing ramps and stairs but no ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; avoidance of concentrated exposure to vibration and temperature extremes of heat and cold; avoidance of moderate exposure to unprotected heights and moving machinery; no "continuous rotation of the neck to either the right or left and no requirement to look up more than frequently;" and a need to sit/stand every 30 minutes with a readjustment period.  [Tr. 47]

As relevant here, the ALJ placed considerable emphasis on medical records concerning Adams' neck-movement limitations and related complications.  He specifically noted the results of a March 2017 MRI that revealed multilevel degenerative changes to her spine, including mild narrowing of the neural foramina and central canal at C3-4.  [Tr. 43, 305]  This

- 3 -

MRI also indicated other degenerative changes of the neck area of the spine, including: a mild disc bulge with mild ligamentum flavum thickening and mild hypertrophy at the C2-3; a mild broad-based disc bulge with small central protrusion and annular tear at the C3-4; and a mild disc bulge with mild ligamentum flavum thickening and mild facet hypertrophy at C4-5. [Tr. 305] ALJ Crocker discussed the plaintiff's June 6, 2017, examination by Louise Kelly, P.A., who found normal gait, station, and strength but limited neck range of motion and neck pain. [Tr. 43, 350-51] The ALJ found that other examinations in July 2016, June 2017, September 2017, November 2017, January 2018, March 2019, indicated similar conditions, and the record generally supports this finding. [Tr. 43, 350, 401, 461, 468, 474, 712] ALJ Crocker cited evidence of headaches and migraines caused by neck pain but also noted that a medical record from a March 7, 2019, visit with Luke Lewis, M.D., and Christopher Feddock, M.D., indicated that her headaches occurred one day out of every ten days. [Tr. 44, 678, 691, 701]

The ALJ also cited to the hearing testimony of the plaintiff regarding her neck condition. [Tr. 43] Adams testified that her neck was the primary location of bodily pain. [Tr. 65] She stated that the pain started in her neck and radiated down her body. [Tr. 65] She also indicated that she had about a ten degree range of motion in her neck. [Tr. 67] She stated that she has limited ability to look up but that looking down and resting her head on her chest relieved some pain. [Tr. 67] Adams testified that in her former job, she used two computer screens and was forced to rest her head on her desk when the pain from rotating her head to look from screen to screen became too great. [Tr. 66-67] She indicated that she was unable to sit for extended periods of time at her former job and that she could not perform it standing up because it required the sedentary analysis of technical information on the two screens for ten-hour shifts. [Tr. 72-73] Adams also stated that she is able to sweep her house's floors, she

goes grocery shopping once every week or ten days, she is able to cook, she is able to shower and dress herself, and she is unable to drive.  [Tr. 62]

Ultimately, the ALJ concluded that the plaintiff's statements regarding the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the evidence in the record and generally supported a sedentary level RFC.  [Tr. 44]  He specifically cited the mild to moderate changes in the neck (cervical) area of the claimant's spine as documented by the 2017 MRI and concluded that physical examinations "have repeatedly noted normal gait and station[] and normal strength" as evidence of this finding.  [Tr. 44]  The ALJ also found that the headaches relating to Adam's neck and spinal problems had improved to one in ten days with lifestyle and treatment changes.  [Tr. 44]  The ALJ further concluded that the claimant's testimony about personal care, cooking, and shopping, as well as a March 11, 2019 medical record documenting that she participates in yoga, supported a sedentary level RFC.  [Tr. 44, 704]

The ALJ also accepted and adopted the testimony of the vocational expert ("VE") at the hearing, Tina Stambaugh, that the RFC is consistent with the physical and mental demands of her prior occupation.  [Tr. 45]  The plaintiff's attorney at the hearing explicitly declined to cross-examine the VE on any of her testimony.  [Tr. 78]

The VE testified that under the United States Department of Labor's  Dictionary of Occupational Titles (1991) ("DOT"), Adams' former job as a data nurse coordinator at the UK HealthCare Transplant Center would qualify as a nurse consultant, a job with a sedentary exertional level.  [Tr. 75-76]  The DOT describes the tasks of a nurse consultant as follows:

> Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services: Reviews and suggests changes in nursing organization and administrative procedures.

- 5 -

Analyzes nursing techniques and recommends modifications.  Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs.  Provides assistance in developing guides and manuals for specific aspects of nursing services.  Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups.  Advises in services available through community resources.  Consults with nursing groups concerning professional and educational problems.  Prepares or furnishes data for articles and lectures.  Participates in surveys and research studies.
*GOE: 10.02.01 STRENGTH: S GED: R5 M4 L5 SVP: 7 DLU: 77*

075.127-014 Nurse, Consultant, Dictionary of Occupational Titles (4th Ed., Rev. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT01B (last visited Aug. 4, 2020).

The ALJ posed the following hypothetical to the VE:

Assume a person of the Claimant's age, education, and work history.  Assume this person could perform work at the sedentary exertional level [,] stand and walk two hours in an eight-hour day [,] [and l]ift and carry ten pounds occasionally, less than ten pounds more frequently . . . . This person can only occasionally climb ramps and stairs.  They're not allowed to climb ladders, ropes, or scaffolds.  This person can crouch, crawl, kneel, and stoop.  [She w]ould need to avoid concentrated exposure to vibrations, temperature extremes of heat and cold[, and] even moderate exposure to unprotected heights and moving machinery.  Could such a person perform any of the past work?

[Tr. 76-77]  The VE responded that such a person could perform the past work of a nurse consultant, as the plaintiff actually performed it and as it is generally performed.  [Tr. 77]  The VE also stated that a hypothetical person with such limitations could perform the occupation if she needed to stand every 30 minutes for a brief readjustment period.  [Tr. 77]

The ALJ then added to the hypothetical, asking the VE whether a person could perform this occupation if that person were not allowed to "have continuous rotation of the neck in either direction, [] right or left, and could no more than frequently raise [her] head up, as far as essentially looking up."  [Tr. 77]  The ALJ responded that this restriction "would still permit

that past work of the sedentary nurse consultant." [Tr. 77] She continued: "I don't think [the occupation] would require continuous rotation. I think, [] as she was describing looking at the computer screen, she would occasionally have to look left or right. But I don't think it would have to be a constant thing." [Tr. 77-78]

The ALJ also asked the VE whether her testimony was consistent with the DOT. [Tr. 78] The VE responded that it was, "with the exception of my opinion regarding alienating positions at work, off task behavior, as well as rotation of the neck . . . As you know, those are not characteristics of work outlined in the DOT. My opinions regarding those issues [are] based on my experiences in the field." [Tr. 78] The resume of the VE appears in the record and indicates that she has held the same position as a medical and vocational disability medical consultant since 1993 and has served in the field of vocational and rehabilitation work since 1986. [Tr. 263]

ALJ Crocker accounted for this last portion of the VE's testimony in his written decision denying DIB with the following remarks:

> In response to inquiry by the undersigned, the vocation expert acknowledged that the Dictionary of Occupational Titles fails to address the ability to change position or the restriction on movement of the neck. The vocational expert addressed this inconsistency by testifying that, based on her experience functioning as a vocational rehabilitation worker and matching disabled workers with vocations, she found that a significant number of jobs in the national economy at the light and sedentary exertional level would accommodate a sit/stand option. Furthermore, the vocational expert testified that such an opinion was based upon years of specific job analysis of various occupations. Based on this testimony, the undersigned concludes, and so finds, that any inconsistency existing in regard to occupations available to the claimant in the national economy and the DOT description of such jobs has been resolved.

[Tr. 45] The ALJ also stated that:

> The vocational expert testified that the claimant's past work included work characterized as a nurse consultant. The vocational expert further testified that

- 7 -

in comparing the claimant's residual functional capacity with the physical and mental demands of the work, she found that the claimant is able to perform it as actually and generally performed.

[Tr. 45]  Based on this testimony, the ALJ adopted the findings of the VE.  [Tr. 45]  In doing so, he found that the plaintiff could perform her past relevant work and was therefore not disabled under the Act.  [Tr. 45]

### III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citations omitted); *see* 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (*en banc*) (quoting 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination

regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and past relevant work to determine whether she can perform his past work.   20 C.F.R. § 404.1520(e).   If she can, she is not disabled.   20 C.F.R. § 404.1520(e).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.   20 C.F.R. § 404.1520(g).   "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"   *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision.   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## IV.

In this appeal, Adams only contends that the ALJ erred in finding that she could perform her past relevant work at step four of the sequential evaluation process.  [Record No. 7-1]  The

plaintiff offers several arguments concerning the step four analysis, and the Court will address them in turn.

**A.**

Adams asserts that the RFC, and the corresponding question in the hypothetical posed to the VE, inappropriately included a restriction that the plaintiff cannot "continuously" rotate her head.  [Record No. 7-1, pp. 11-13]  She emphasizes the use of the term "continuous," contending that it is ambiguous and inconsistent with the terms "occasionally," "frequently," and "constantly" prescribed by the Commissioner's Program Operations Manual System ("POMS").[1]  [Record No. 7-1, pp. 12-13]

Adams insists that the ALJ should have adhered to the terms "constantly," "frequently," and "occasionally" as defined by the POMS:

> 11.    Constantly: Use of this term in the RFC or [Selected Characteristics of Occupations ("SCO")] means that the activity or condition occurs two-thirds or more of an eight-hour day.
>
> 33.    Frequently: Use of this term in the SCO or RFC means that the activity or condition occurs one-third to two-thirds of an 8-hour workday.
>
> 53.    Occasionally: Use of this term in the SCO or RFC means that the activity or condition occurs at least once up to one-third of an 8-hour workday.

POMS DI 25001.001 Medical and Vocational Quick Reference Guide, Social Security Administration, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited Aug. 5, 2020).  But Adams does not argue, and the POMS does not actually indicate, that the ALJ was

---

[1]     The POMS is a policy and procedure manual used by Department of Health and Human Services employees.  *Davis v. Sec'y Health and Human Servs.*, 867 F.2d 336, 340 (6th Circ. 1989).  It lacks the force of law, but the Sixth Circuit considers it to be persuasive authority on procedural Social Security issues.  *Id.*

*required* by law or internal Social Security Administration ("SSA") policy to use these terms in this instance or in every RFC reference to a claimant's ability to move a part of her body. Additionally, at least two courts have upheld ALJ determinations involving RFCs stating that plaintiffs could not "continuously" rotate their necks.   *Haack v. Colvin*, No. 14-1296 (MJD/BRT), 2015 U.S. Dist. LEXIS 95999, at *20 (D. Minn. June 19, 2015), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 95371, at *1 (D. Minn. July 22, 2015); *Cooney v. Astrue*, No. 4:10-cv-01936, 2011 WL 3236074, at *5 (M.D. Pa. July 27, 2011).   The plaintiff has cited no cases discussing a failure to use the relevant terms defined by POMS DI 25001.001, let alone any cases that reverse an ALJ's decision for this reason.   Thus, it does not appear that the use of the term "continuous" rather than those outlined in POMS DI 25001.001 necessarily renders a RFC or hypothetical inaccurate to the extent that remand is required.

Further, the RFC finding that the plaintiff could not continuously rotate her neck is supported by substantial evidence.   The 2017 MRI cited by the ALJ's decision revealed mild to moderate cervical spine/neck problems but did not reveal more concerning changes.   The ALJ also validly referred to the medical records indicating that neck pain-related migraines had decreased in frequency.   The ALJ also accounted for the personal care, cooking, shopping, and yoga activities evidenced by the plaintiff's testimony or medical records – all activities which would require some amount of neck movement.   The ALJ's RFC ostensibly indicates that the claimant could move her neck to some extent, and it appears that its non-continuous limitation on neck movement was generally supported by substantial evidence.

And importantly, Adams primarily takes issue with the reliance on VE testimony after the use of "continuous" in the hypothetical.   After considering the neck limitation addition to the hypothetical, the VE opined that the past relevant work would not involve continuous neck

rotation but would rather involve "occasional" neck rotation.  Adams contends that her testimony at the hearing demonstrated that she likely had to "constantly" rotate her neck in her past occupation.[2]  [Record No. 7-1, p. 12]

But as the Commissioner contends [Record No. 9, p. 10], the plaintiff waived argument regarding the VE's testimony concerning the hypothetical.  When a plaintiff's attorney fails to object to certain VE testimony or cross-examine the VE on an issue raised in the hearing, the plaintiff waives the right to argue that point in district court.  *E.g.*, *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[C]ounsel may not now complain because he failed to cross examine [an expert] when he had an opportunity to do so . . . .") (citation omitted); *Hammond v. Chater*, 116 F.3d 1480 (Table), 1997 WL 338719, at *3 (6th Cir. June 18, 1997) ("Plaintiff also objects that the jobs listed by the VE, and used by the ALJ to deny benefits, are all at least semi-skilled, whereas the ALJ found her able to do only unskilled work.  [The] plaintiff waived this argument by failing to raise it to the VE at the hearing.") (citation omitted); *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018) (collecting cases).

Here, Adams' attorney was present when the ALJ presented the hypothetical to the VE using the word "continuous" and the VE responded that the limitation would not prevent her from performing the past relevant work, which would likely require "occasional" rotation of the neck.  Nevertheless, counsel declined to cross-examine the VE and elicit testimony on this point.  Thus, the argument has been waived.

---

[2]     The Court notes that the plaintiff's argument on this issue is difficult to follow.  In the same paragraph, the plaintiff claims that: (1) her past job as a data nurse coordinator "likely" required "constant" neck rotation to look from screen to screen; and (2) "it is difficult to imagine a job that would require 'constant' neck rotation.'"  [Record No. 7-1, p. 12]

Regardless, the ALJ's reliance on the VE's opinion was not misplaced.  Generally, the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity." 20 C.F.R. § 404.1560(b)(2).  "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."  *Id.*

> Additionally,
>
> a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id.*  Substantial evidence supporting an ALJ's decision "may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the plaintiff's] individual physical and mental impairments." *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)) (applying *Varley* in the context of a step four analysis) (internal quotation marks omitted).

As indicated, the limitation described in the RFC hypothetical was supported by substantial evidence.  The VE also validly testified that her consideration of the neck rotation issue was based on her experience.  Thus, reliance on the testimony was not misplaced.

- 13 -

And as the Commissioner points out [Record No. 9, p. 9], the testimony by the VE pertained to the plaintiff's ability to perform past work actually *and* generally.  The plaintiff's arguments concerning the "constant" neck rotation required by her past job at UK HealthCare Transplant Center relate only to her ability to actually perform that specific job.   The Commissioner contends that she could actually and generally perform past relevant work, and even if the plaintiff is correct that her past position specifically involved "constant" neck rotation, this does not discredit the VE's opinions about the job as it is generally performed.

## B.

Adams also argues that the VE mischaracterized her past relevant work (data nurse coordinator) as a nurse consultant under DOT 075.127-014.  [Record No. 7-1, pp. 5-6]  The plaintiff argues that the DOT's nurse consultant job description is not the same as that of her prior occupation, *i.e.*, analyzing organ transplant data on computer two computer screens.  [*Id.*] She contends that her actual position required her to rotate her neck more frequently than the nurse consultant tasks described in the DOT listing.  [*Id.* at pp. 6, 10]

Again, the Commissioner is correct to point out that this argument was waived when Adams' attorney failed to cross-examine the VE at the hearing.  [Record No. 9, p. 10]  Counsel could have questioned the VE and elicited testimony regarding the duties of a nurse consultant under the DOT as compared to the duties of a data nurse coordinator at the UK HealthCare Transplant Center.  But Adams' attorney explicitly declined to do so, and the argument has been waived.

Regardless, the plaintiff's misclassification argument is unavailing.  "The relevant inquiry" at step four is whether a claimant "could still perform [the] type of work and not necessarily the specific job that [she] had in the past."  *Clendening v. Commissioner*, 482 F.

App'x 93, 96 (6th Cir. 2012) (citing *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)).

Adams does not challenge the RFC determination that she can perform sedentary level work, and the VE characterized her prior position as sedentary level work like that of the nurse consultant entry in the DOT.  Further, the VE explicitly testified that, based on the hypothetical posed to her, a person could perform the job of nurse consultant both as it was actually performed and as it was generally performed.  She listened to the plaintiff's testimony regarding her neck pain and limitations and testified that the addition of neck limitations to the hypothetical did not change her opinion that a person could perform the past work of a sedentary nurse consultant.  The regulations account for reliance on such a determination.  20 C.F.R. § 404.1560(b)(2); *Griffeth*, 217 F. App'x at 429.  The VE's response to the hypothetical is substantial evidence that, given the specific limitations of Adams' impairments, she could perform the nurse consultant occupation as it is described in the DOT and as she performed at the UK HealthCare Transplant Center.

Moreover, the VE explained that she relied on her experience in the field to reach her conclusion that past work could be performed with the neck limitations, as the DOT entry does not account for such restrictions.  The Sixth Circuit has endorsed ALJ reliance on VE testimony where it conflicts with information from the DOT.  *E.g.*, *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *Conn v. Sec'y of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995).  And the SSA authorizes reliance on evidence "from a VE's . . . experience in job placement or career counseling," even when such evidence differs from the DOT.  Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *1 (S.S.A.) ("Policy Interpretation

- 15 -

Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information In Disability Decisions.").

VE Stambaugh has considerable experience in the relevant field of vocational analysis, and she used this experience to conclude that past relevant work could be performed with limitations not accounted for in the DOT. This is substantial evidence in support of the ALJ's decision, and the ALJ did not improperly rely on it even if the DOT description of nurse consultant did not perfectly describe the specific position Adams held at the UK HealthCare Transplant Center.

## C.

The plaintiff also argues that the ALJ did not comply with SSR 82-62, 975-82 Soc. Sec. Rep. Serv. 836, 1982 WL 31386, at *1 (S.S.A.) ("Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General"). Adams asserts that the ALJ failed to make "[a] finding of fact as to the physical and mental demands of the past job/occupation" as required by SSR 82-62. [Record No. 7-1, pp. 9-11] Specifically, she takes issue with the ALJ decision's acceptance and adoption of the VE testimony to define the physical and mental demands of her prior job as a data nurse coordinator/nurse consultant. [*Id.* at pp. 10-11]

The Court finds this argument unconvincing. Adams cites to no caselaw regarding the specificity required of such a finding under SSR 82-62, and it does not appear that the Sixth Circuit has commented on the issue. Further, her argument that the relevant findings contained in the ALJ's decision are inadequate is premised on the idea that they refer almost exclusively to the VE's opinion of her prior relevant work, which she believes misclassified her former position as a nurse consultant. [Record No. 7-1, p. 10] Again, the Court finds that the citation to the testimony that made this characterization was not improper. The ALJ's decision and the

- 16 -

VE opinion it relies upon account for the fact that the nurse consultant position generally described in the DOT differed from the job actually performed.  Thus, the citation to this opinion that serves as a basis of a finding of fact regarding the "physical and mental demands of the past job/occupation" was not inappropriate.

### D.

Although she does not explicitly contend that the ALJ's decision should be overruled based on the ALJ decision's paragraph reconciling the inconsistency between the VE testimony (which accounted for the plaintiff's neck limitations) and the DOT (which does not account for these limitations), Adams raises the point that this paragraph states that the VE found "that a significant number of jobs in the national economy at the light and sedentary exertional level would accommodate a sit/stand option."  [Record No. 7-1, pp. 8, 11; Tr. 45] The Court agrees with the plaintiff that the testimony did not contain any comment about a significant number of jobs in the national economy but notes that this does not significantly alter the present analysis for two reasons.

First, this paragraph is an ostensible reference to SSR 00-4p, and the VE and ALJ generally complied with this ruling.  Under SSR 00-4p, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  SSR 00-4p.  A VE's opinion that a claimant can perform past work based on experience in job placement or career counselling is a "reasonable explanation" for the VE's divergence from the DOT, and an ALJ may rely on such evidence when finding that a claimant is not disabled under the Act.  *See id.* at *2.  An ALJ is required to inquire about inconsistencies between the DOT and the VE's

testimony at hearings and must explain the resolution of the conflict between the DOT and the VE evidence in the decision denying benefits. *Id.* at \*4.

Here, the ALJ inquired about the inconsistency between the DOT and the VE testimony at the hearing, and the VE explained that her opinions regarding the plaintiff's ability to perform past relevant work were not entirely consistent with the DOT, which does not account for, *inter alia*, the plaintiff's neck limitations. She further testified that she based her opinions on her personal experience in the relevant field, and the ALJ documented this in the decision by stating that: "the vocational expert testified that such an opinion was based upon years of specific job analysis of various occupations." [Tr. 45] The ALJ concluded that, "[b]ased on this testimony, the undersigned concludes, and so finds, that any inconsistency existing in regard to occupations available to the claimant in the national economy and the DOT description of such jobs has been resolved." [Tr. 45] The ALJ may have mistaken the VE's comments about Adams' ability to perform past relevant work, generally and actually, as testimony regarding the ability to perform a significant number of jobs in the national economy. But regardless of the reason for the inclusion of this sentence, the ALJ properly performed his duties under SSR 00-4p by inquiring about inconsistencies with the DOT and citing to the VE's testimony regarding experience as a basis her opinions in the decision denying benefits.

Second, the sentence concerning the ability to perform a significant number of jobs in the national economy aligns with a step five determination rather than a step four determination. "[S]tep four can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy; the regulations explicitly reserve inquiry into the national economy for step five." *Barnhart v. Thomas*, 540 U.S. 20, 25

(2003) (upholding the Commissioner's interpretation of the Act); *see also* 20 C.F.R. § 404.1560(c).

The ALJ found that the claimant was not disabled at step four because she was able to perform past relevant work.[3]  And this decision was supported by substantial evidence.  To the extent the ALJ violated SSR 00-4p by remarking that the VE discussed issues relating to step five, that error was harmless because Adams was not "prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) (quotation marks omitted)).

**V.**

Accordingly, it is hereby **ORDERED** as follows:

1.    Plaintiff Lori Beth Adams' motion for summary judgment [Record No. 7] is **DENIED**.

2.    Defendant Commissioner Andrew Saul's motion for summary judgment [Record No. 9] is **GRANTED**.

Dated:  August 6, 2020.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[3]    It is evident that the plaintiff realizes that the decision to deny DIB benefits was made at step four because she only challenges the ALJ's determination that she was able to perform her past relevant work.  [Record No. 7-1]